**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000789
23-JAN-2015
08:44 AM**

NO. CAAP-11-0000789 and CAAP-11-0000896

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DAIRY ROAD PARTNERS, a Hawai'i limited partnership,
Appellant- Appellant, v. THE MAUI PLANNING COMMISSION,
an agency of the County of Maui, a political subdivision
of the State of Hawai'i and A & B PROPERTIES, INC.,
a Hawai'i corporation, Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 11-1-0455(1))

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

In these consolidated cases, Dairy Road Partners
appeals from the September 29, 2011 Order Granting Appellee A & B
Properties, Inc.'s Motion to Dismiss Appeal Filed on July 21,
2011, or, in the Alternative, for Summary Judgment, Filed on
September 7, 2011 ("Order Granting Motion to Dismiss") and the
October 28, 2011 Judgment in favor of Appellee Maui Planning
Commission and Appellee A & B Properties, Inc. ("Judgment"),
which were both entered in the Circuit Court of the Second
Circuit.[1]  In Dairy Road Partners' initial appeal to the Circuit
Court from the Commission's denial of its petition to intervene
in A & B's Special Management Area ("SMA") Use Permit
application, the court concluded that Dairy Road Partners failed
to establish that it was a "person aggrieved" for purposes of
standing to bring an appeal under Hawaii Revised Statutes 91-

---

[1]     The Honorable Rhonda I. L. Loo presided.

14(a). Therefore, the court held, it did not have subject matter jurisdiction over the appeal.

On further appeal to this court,[2] Dairy Road Partners offers the laconic argument that, because the Commission denied its petition to intervene, it is "indisputably a 'person aggrieved by a final decision and order in a contested case' and is therefore 'entitled to judicial review'" by the Circuit Court under HRS chapter 91. Because we review questions of standing and jurisdiction de novo, we review the record of our own accord. In so doing, we conclude that Dairy Road Partners is a "person aggrieved" under HRS § 91-14(a). Therefore, the Circuit Court has jurisdiction to consider Dairy Road Partners' appeal. We vacate the Judgment and remand to the Circuit Court for further consideration of Dairy Road Partners' appeal and A & B's motion to dismiss.

I.   Background

On May 3, 2010, A & B applied to the Maui Planning Commission for an SMA Use Permit for its proposed Maui Business Park Phase II Subdivision project in Kahului, Maui. The Commission informed A & B that it would review the project on April 26, 2011, and instructed A & B to notify all owners and recorded lessees located within 500 feet of the proposed project about the upcoming review.

After independently learning of the hearing, Dairy Road Partners filed a Petition to Intervene in the proceedings on April 25, 2011. The petition argued that the project presented traffic and drainage problems for Dairy Road Partners and others in the area. Commission rules, however, required that petitions to intervene be filed at least ten days before the scheduled hearing. Maui P. Comm. R. § 12-201-40(a). At the hearing, Dairy Road Partners agreed that its petition was untimely but argued that it had good cause to file late because it did not receive

_____

[2]   Contrary to its notice of appeal filed in the Circuit Court where Dairy Road Partners referenced HRS § 91-14 as the authority upon which it appealed, the notices filed to this court reference HRS § 91-15 as authority. Nevertheless, the opening brief argues that its appeal is authorized under HRS § 91-14(a). Furthermore, the answering brief discusses the appeal only within the context of HRS § 91-14. Consequently, we treat the appeal as though Dairy Road Partners proceeded under HRS § 91-14.

notice of the hearing as required under the Commission's rules. Maui P. Comm. R. § 12-202-13(g).

A & B responded that Dairy Road Partners did not have good cause for its late filing because A & B had notified HRT Realty, LLC, which owned the property on which Dairy Road Partners' gasoline service station sits. When asked by the Commission whether A & B was contending that Dairy Road Partners was outside the 500-foot zone set out in its notification rule, A & B's counsel responded: "No, we are fairly conservative when it comes to our 500-foot measurements and if there is a question as to whether or not that is our personal policy in our office, if there is a question, whether it's in or out we are usually more conservative."[3] The Commission voted 7-1 to deny the petition. Later in the same meeting, the Commission voted 8-0 to approve A & B's SMA Use Permit for the proposed project.

On May 19, 2011, Dairy Road Partners filed a motion for reconsideration of the denial of the petition with the Commission. Once again, Dairy Road Partners' argument focused largely on its late filing and, specifically, on its contention that its failure to receive notice of the hearing represented good cause. The Commission denied the motion. On July 12, 2011, the Commission issued Findings of Fact, Conclusions of Law, Decision and Order Denying Dairy Road Partners' Petition to Intervene Filed on April 25, 2011, in which it concluded that Dairy Road Partners had failed to meet its burden of showing that good cause existed to excuse its failure to timely file its petition, as required by Commission Rule § 12-201-40(a).

Dairy Road Partners thereafter appealed to the Circuit Court and argued that, in its petition, it "claimed [that A & B's] proposed subdivision would substantially affect the economic and social welfare of the Community and would have substantial secondary impacts on public streets and drainage." Dairy Road Partners further contended that granting the permit "would have a

---

[3]     A & B and the County appear to have subsequently agreed that Dairy Road Partners' parcel is located more than 500 feet from the project. Our decision here does not reach that question or preclude either the Circuit Court or the Commission from relying on any such fact, should it be established, in any future review of A & B's motion or Dairy Road Partners' petition.

detrimental effect on traffic, disrupt the commercial use of the property and cause economic harm[,]" and that it "had concerns about drainage since the area is prone to flooding."

A & B filed with the Circuit Court a motion to dismiss Dairy Road Partners' appeal, contending that Dairy Road Partners did not have standing to appeal and, therefore, the Circuit Court lacked subject matter jurisdiction over the matter. In response, Dairy Road Partners submitted a declaration of its general partner, Glenn Nakamura, which states, in relevant part, that:

> 4. I believe that . . . Dairy Road Partners is aggrieved by the damages to my personal or property rights.
>
> 5. That Dairy Road Partners has been at its present location since 1985. Since 1985 till the early 1990, [Dairy Road Partners] has been selling approximately 250,000-300,000 gallons of gasoline per month. My customers were in large part regulars and local residents of the Kahului, Paia, Haiku, Makawao, Kula and Pukalani.
>
> 6. Since the development of the Costco and Kmart in early 1990, traffic has increased significantly on Dairy Road, Kahului, Maui, Hawaii.
>
> 7. The congestion on Dairy Road increased due to the additional cars that were going to Costco and Kmart and the other developments that have been occurring in the area surrounding the intersections Hana Highway and Dairy Road and Dairy Road and Haleakala Highway.
>
> 8. Each year my business has been affected by the traffic and [Dairy Road Parthers] is presently selling on the average 180,000 gallons of gasoline a month. . . .
>
> 9. The reason for the loss of business, I believe[,] is that my regular customers and the local residents tend to avoid the traffic that is on Dairy Road.
>
> 10. I believe that the claims in the documents filed by Applicant in this case indicate that the potential impacts [of the proposed project] would be mitigated by future infrastructure.
>
> 11. I have concerns because there is no guarantee that infrastructure development will [occur] in a timely fashion or that specific mitigation measures during the construction phase for the development and any access road will be implemented or implemented in a way that would prevent congestion on the road and affect the surrounding roadways such as Dairy Road and Haleakala Highway.
>
> 12. I have owned this business for 26 years and I have had first-hand experience of the impacts of traffic as a result of development.
>
> 13. This service station was in business at the time when the Maui Market Place was constructed and that had a dramatic affect on the traffic in the area and there were impacts on the business.
>
> 14. There also were impacts on my regular customers.

. . . .

16. There comes a point [where,] because the congestion on Dairy Road[] by virtue of the construction[] and the substandard nature of Dairy Road as it now stands, . . . regular customer[s,] those who are consistent and come on a regular basis[,] will stay away because of the congestion.

17. There are from time-to-time people who will come through to use that lane to access the airport as they are traveling, but they are not dependable in that they can move from one station to another without any problems. It is the local customers that you have established a relationship over a period of years to form a base of your business and if you increase traffic congestion there [is a] decrease in the number of persons.

18. I have also had incidents during heavy rains where the intersection on Dairy Road, Hana Highway and the feeder roads immediately adjacent thereto and such as Dairy Road fronting my property all become flooded.

* * *

27. Since Dairy Road Partners' business is very close to the intersection of Haleakala Highway and Dairy Road[,] it will be impacted by the modification of the intersection, the building of any access roads and the closure of any access from Costco which would wind around behind the airport, by a route that is regularly used [by] those Costco customers of the potential customers to this development to go to their homes upcountry Maui and Paia, Haiku, Makawao and Hana.

28. I am not talking about hypothetical injury because when Dairy Road was first widened to accommodate . . . the Maui Market Place . . ., there was a significant impact[] on my business as mentioned above.

29. I also experienced significant impacts as a result of flooding since areas of the intersection of Haleakala Highway and Dairy Road are lower than others causing large [flooded] areas in or very close to the intersection. Also[,] the roadway immediately fronting the Dairy Road Shell floods depending on the run-off from the main intersection.

30. I also believe that it is evident that any potential impacts on my business will be directly related to the proposals offered to the proposed development.

31. My goal is to participate in the process and ensure that there are sufficient mitigation measures to protect my business and other similarly situated from the impacts I had already experienced.

On September 29, 2011, the Circuit Court issued its Order Granting Motion to Dismiss. In it, the court found that Dairy Road Partners

5

> failed to meet its burden in establishing that it is a
> "person aggrieved" because it did not provide sufficient
> facts or allegations to demonstrate that it has suffered an
> actual or threatened injury or that such injury is traceable
> to the Commission's conduct. . . . Therefore, the court
> finds that [Dairy Road Partners] is not a "person
> aggrieved", [Dairy Road Partners] lacks standing to bring
> this appeal, and since [Dairy Road Partners] lacks standing,
> this Court does not have subject matter jurisdiction over
> this appeal under HRS § 91-14(a).

This timely appeal follows.

## II. Standards of Review

*Administrative Agency Decisions - Secondary Appeals*

> Review of a decision made by the circuit court upon its
> review of an agency's decision is a secondary appeal. In an
> appeal from a circuit court's review of an administrative
> decision the appellate court will utilize identical
> standards applied by the circuit court. Questions of fact
> are reviewed under the "clearly erroneous" standard. In
> contrast, an agency's legal conclusions are freely
> reviewable. An agency's interpretation of its rules
> receives deference unless it is plainly erroneous or
> inconsistent with the underlying legislative purpose.

*Hawaii Teamsters & Allied Workers, Local 996 v. Dep't of Labor & Indus. Relations*, 110 Hawai'i 259, 265, 132 P.3d 368, 374 (2006) (internal quotation marks and citations omitted).

*Jurisdiction*

"Whether the circuit court has jurisdiction to hear the plaintiffs' complaint presents a question of law, reviewable de novo. A plaintiff without standing is not entitled to invoke a court's jurisdiction. Thus, the issue of standing is reviewed de novo on appeal." *AlohaCare v. Ito*, 126 Hawai'i 326, 341, 271 P.3d 621, 636 (2012) (quoting *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 113 Hawai'i 77, 90, 148 P.3d 1179, 1192 (2006)) (internal quotation marks omitted). The review of whether an appellant has satisfied its burden of establishing standing is confined to the record on appeal. *United Pub. Workers, Local 646, AFSCME, AFL-CIO v. Brown*, 80 Hawai'i 376, 381, 910 P.2d 147, 152 (App. 1996).

## III. Discussion

Dairy Road Partners' principal argument is that it was "indisputably a 'person aggrieved by a final decision and order in a contested case'" because the Commission denied its Petition

to Intervene.[4] Although HRS chapter 91 does not define the term "person aggrieved," the Hawai'i Supreme Court has held that the phrase is "essentially synonymous with someone who has suffered 'injury in fact.'" *See AlohaCare*, 126 Hawai'i at 342, 271 P.3d at 637 (quoting *E & J Lounge Operating Co. v. Liquor Comm'n of the City & Cnty. of Honolulu*, 118 Hawai'i 320, 345 n.35, 189 P.3d 432, 457 n.35 (2008)) (some internal quotation marks omitted). On appeal, then, we consider whether Dairy Road Partners has suffered an "injury in fact" such that the Circuit Court erred in dismissing its appeal for lack of subject matter jurisdiction.

We determine whether someone seeking to appeal from agency action under HRS § 91-14 has suffered an "injury in fact" by considering: "(1) whether the person 'has suffered an actual or *threatened injury* as a result of the [agency's decision],' (2) whether 'the injury is fairly traceable to the [agency's decision],' and (3) whether 'a favorable decision would likely provide relief for [the person's] injury.'" *Id.* at 342-43, 271 P.3d at 637-38 (brackets in original) (emphasis added) (quoting *E & J Lounge Operating Co.*, 118 Hawai'i at 345 n. 35, 189 P.3d at 457 n. 35) (some internal quotation marks omitted). An appellant must satisfy all three prongs of the test to establish standing. *See Sierra Club v. Hawai'i Tourism Auth. ex rel. Bd. of Directors*, 100 Hawai'i 242, 250, 59 P.3d 877, 885 (2002) ("Since the [injury-in-fact] test is stated in the conjunctive, Petitioner must satisfy all three prongs to establish its standing."). Therefore, Dairy Road Partners

> has the burden of proof with respect to the injury-in-fact test:
>
> > Since [the injury-in-fact elements for standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation... *At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice*[.]

---

[4] Dairy Road Partners' further argument that the Maui Planning Commission Rule § 12-201-46 explicitly permits an appeal under HRS § 91-14 when a petition for intervention is denied necessarily depends on whether an appeal under HRS § 91-14 is permitted. This brings us back to the analysis above and the question of whether Dairy Road Partners is a "person aggrieved."

*Id.* at 250-51, 59 P.3d at 885-86 (emphasis added) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Based on our review of the record, Dairy Road Partners has alleged facts that would establish that it has standing, under the injury-in-fact test, as an "aggrieved person" under HRS § 91-14. Indeed, Nakamura stated that traffic and construction issues related to the proposed A & B development project, unless mitigated, threatened to injure Dairy Road Partners' business. In support, Nakamura noted that his gasoline sales had declined between 30-40% after Costco and Kmart developments were completed nearby in early 1990.[5] Nakamura attributed his reduced sales to the fact that the service station's regular customers—who are mostly local residents—tended to avoid the traffic on Dairy Road. Nakamura argued that those customers would be even further affected by A & B's proposed project. Moreover, Nakamura contended that A & B itself recognized the likely adverse traffic effects associated with the project by offering mitigation measures in its traffic study.

Nakamura's declaration satisfies the first part of the injury-in-fact test. *Compare Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 70 n. 14, 881 P.2d 1210, 1216 n. 14 (1994) (project neighbor demonstrated injury-in-fact distress and discomfort from construction-related diesel exhaust, early morning noise, and increased traffic generally, in addition to health-related fears), *with United Pub. Workers, Local 646*, 80 Hawai'i at 381, 910 P.2d at 152 (appellant lacked standing to appeal because appellant's assertions were "only of possible injury . . . [and t]he record [was] devoid of any documents, exhibits or testimony to substantiate that [appellant] suffered any concrete injury"); *see also Soc'y Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 176 (3d Cir. 2000) (residents alleged concrete and particularized injury in the form of increased traffic, pollution, and noise).

---

[5]     Dairy Road Partners' concerns were said to not be related to competition that might accompany the development, recognizing that competition is "not a[n] SMA issue."

Nakamura's declaration also satisfies the second part of the injury-in-fact test because it establishes that the threatened injury to Dairy Road Partners is "fairly traceable" to the Commission's decision to disallow Dairy Road Partners intervention in its consideration of the A & B project. Nakamura explicitly stated that "any potential impacts on my business will be directly related to the proposals offered to the proposed development." Dairy Road Partners' alleged injuries could not occur without the development contemplated in the SMA application. *See Sierra Club v. Dep't of Transp.*, 115 Hawai'i 299, 331, 167 P.3d 292, 324 (2007) (holding that alleged injuries to appellants' marine tourism business from the presence of a commuter ferry were traceable to the state department of transportation's decision to exempt the ferry company from its obligation to prepare an environmental assessment).

Finally, as to the third part of the test, the Circuit Court concluded, rather summarily, that "a favorable decision by this Court would not likely provide relief because, even if [Dairy Road Partners'] Petition to Intervene could be heard by the Commission, [its] chances of being admitted as a party in the Commission's proceedings are remote." While the Commission might have declined to allow intervention even if it had determined that Dairy Road Partners had good cause for its late-filed petition, the order and the related transcript provide us with no basis upon which we might discern why the Circuit Court believes that to be the case.

Furthermore, there is nothing in the record to suggest why Dairy Road Partners, if it was allowed to intervene, would not or could not find relief for the injury it alleges. Indeed, intervention itself would at least "likely provide relief" by necessarily focusing the agency's attention further on the intervenor's concerns. *See Sierra Club v. Dep't of Transp.*, 115 Hawai'i at 331, 167 P.3d at 324 (holding that the "threat of increased risk [was] clearly redressable by the preparation of an [environmental assessment], which would allow the threatened injuries raised by Appellants to be addressed and potentially mitigated or avoided."); *E. Diamond Head Ass'n v. Zoning Bd. of*

*Appeals of City & Cnty. of Honolulu*, 52 Haw. 518, 521–24, 479 P.2d 796, 798–99 (1971) (overturning dismissal of HRS § 91-14 appeal and remanding for trial, in effect granting intervention to "aggrieved persons" unable to intervene at agency proceeding below).

IV.  Conclusion

Dairy Road Partners has satisfied all three parts of the injury-in-fact test and, therefore, is an "aggrieved person" with standing to appeal under HRS § 91-14.  As such, we vacate the Judgment, filed on October 28, 2011 in the Circuit Court of the Second Court, and remand the case to the Circuit Court for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, January 23, 2015.

On the briefs:

Frederick W. Rohlfing III
Michael G. Kozak
(Case Lombardi & Pettit),
for Appellant-Appellant Dairy
Road Partners, a Hawai'i
limited partnership.

Gregory J. Garneau,
for Appellee-Appellee A & B
Properties, Inc., a Hawai'i
corporation.

Jane E. Lovell
Deputy Corporation Counsel,
County of Maui,
for Appellee-Appellee The Maui
Planning Commission.

Presiding Judge

Associate Judge

Associate Judge

10